## Diffenderfer v. Grove

*George S. Black* and *James A. Strite,* for plaintiffs.
*Edwin D. Strite,* for defendants.

WINGERD, P. J., September 2, 1955.—A motion for a new trial was filed in this case by plaintiffs. The only ground pressed and argued before the court in its support is that the court erred in admitting in evidence a certain book of appointments, exhibit E, which will be further described in this opinion.

Plaintiffs, husband and wife, tenants of a part of a building owned by defendants, husband and wife, which is located at the northeastern corner of Lincoln Way East and Spring Street, two public streets in Chambersburg, Franklin County, brought this suit to recover damages for injuries sustained by the wife when she tripped and fell over a concrete and iron object, being part of the curb which had been broken off and which was lying on the sidewalk of Spring Street, on which the western side of defendants' building abuts, near the building wall. Plaintiffs alleged that the object had been on the sidewalk for at least two weeks and that defendants had knowledge or should have known of its presence and that it constituted an obstruction and hazard to pedestrians lawfully using the sidewalk. Mrs. Diffenderfer testified she tripped over the object and fell about 7:30 p.m. on November 10, 1949, which was Thursday, that she was coming up from the basement where she had been to bathe and bandage the hand of the janitor, which had been injured, when she saw some friends at Lincoln Way and was walking southward to meet them when she fell. She stated she had seen the object before that time, that at the time she tripped and fell it was dark and the portion of the sidewalk toward the building was very dark. On cross-examination she testified as follows:

"Q. So then the light was down Lincoln Way in the direction of the Western Maryland Railway?

"A. A little, but it didn't shine back where I fell.

"Q. It didn't shine back where you fell?

"A. No, it was definitely dark there.

"Q. And what lighted the other part of Spring Street where the sidewalk is?

"A. I don't know. I don't see no light down there, so I don't know. You just have to feel, I guess, when you go around there.

"Q. Do you mean you were stone blind?

"A. Oh, no indeed.

"Q. Do you mean with the Lincoln Way light out here, by the store lights that you couldn't see any object whatsoever on this sidewalk at Spring Street? Is that what you mean?

"A. You couldn't see anything on Spring Street, no. But they weren't on Spring Street.

"Q. I am asking you what you could see on Spring Street.

"A. Nothing.

"Q. Nothing whatever. I call your attention to the window of the Eaken Barber Shop. Is that a glass window?

"A. That is a glass window and the curtains were down.

"Q. All right, and there is a glass window on the other side?

"A. Yes sir, and the curtains were down.

"Q. And the curtains were venetian blinds?

"A. Uhuh.

"Q. And you knew they were down, right?

"A. Well, Mr. Eaken wasn't in his shop that night and everything was dark.

"Q. And you went, instead of going on the right-hand part of the sidewalk to meet the Kimples, who were coming towards you across the street, you went

to the side that would have been their lefthand side to pass them. Is that what you did?

"A. I stayed to the inside of the building.

"Q. Yes.

"A. And they walked on the outside.

"Q. They walked to your left and you walked to their left?

"A. Well, they would be walking to my right.

"Q. Were they walking to meet you?

"A. Yes, sir, not the same direction. We were walking toward one another.

"Q. Of course, they had seen you, had they not?

"A. I don't think they saw me until I fell."

On redirect examination plaintiff testified:

"Q. Mrs. Diffenderfer, what day of the week did this accident happen?

"A. Thursday.

"Q. And Mr. Eaken's barber shop was closed Thursday evenings?

"A. Yes sir."

Defendants called Mrs. Eaken, who testified she is the widow of Mr. Eaken who operated the barber shop at the corner of Spring and Lincoln Way, that he had been dead 21 months, that she was familiar with the way he conducted his business, that he worked by appointment, that a book marked exhibit E came into her possession from her husband's possession. She testified in reference to it as follows:

"Q. Now, Mrs. Eaken, I show you book marked Defendants Exhibit E. Will you state what book that is?

"A. Yes. That is his appointment book for 1949.

"Q. That is Mr. Eaken's, your husband's appointment book for 1949?

"A. That's right.

"Q. Do you know the handwriting in that book?

"A. Yes, I do.

"Q. Whose handwriting is that?

"A. That is my husband's.

"Q. Were you personally familiar with the way he kept that book? Do you know when and where he made the entries in it?

"A. Yes, I do.

"Q. And how did he make them and when?

"A. He would make them whenever his customers would come in and ask for an appointment or else take them by telephone.

"Q. And were you present at times when he took appointments by telephone and entered them in that book or similar books?

"A. I was there.

"Q. And were you present in his shop from time to time when he made similar appointments and entered them in that book?

"A. Yes, I was.

"Q. And did you yourself at times enter any of the appointments in that book?

"A. Yes, I did, when he was too tired.

"Q. And how did you enter those when he was too tired?

"A. There were a lot of customers would come in every two weeks, and he would always tell me how he wanted them, and I would write them down. My handwriting is not on there.

"Q. I call your attention to entries on November 10th, 1949. Were all these entries in this book for the year 1949?

"A. 1949. He had a new book for each year.

"Q. And are the entries for 7, 7:30, 8:30, and 9:00 o'clock in his handwriting?

"A. That's right.

"Q. Now, it has been testified your husband's shop was closed on Thursday nights. Is that correct or incorrect?

"A. No, that is incorrect. Not after he went on appointments.

"Q. And when did he go on appointments?

"A. I can't tell.

"Q. It was before 1949, was it?

"A. Yes.

"Q. And after 1949 he never closed on Thursday, is that right?

"A. No, Just Sundays is the only time."

She further testified that on holidays the page was just marked with an "X" or left blank and further, that the appointments were sometimes made two weeks and sometimes one week ahead and once in a while he had cancellations and then he would fill in or erase that name.

The book had one page for each day of the year and printed lines for appointments every half hour from 8:30 a.m. to 9 p.m., inclusive, except Sundays, and showed appointments for every Thursday evening except Thanksgiving Day and those in July, during which month no appointments were entered.

The book was offered in evidence and objected to on many grounds. It was admitted for the purpose of contradicting the testimony of plaintiff, Mrs. Diffenderfer, that the shop was closed Thursday evenings in connection with the testimony of Mrs. Eaken that she knew of her own knowledge that the shop was open Thursday evenings.

In its charge the court said:

"Mrs. Eaken was called and she identified the appointment book and also stated that she knew her husband had his barber shop open Thursdays and Thursday evenings and then she presented this appointment book which showed appointments on Thursday evenings and appointments on November 10th. The purpose of that testimony was to contradict Mrs. Diffenderfer."

Plaintiffs contend that the book was not admissible because it was hearsay and does not come within the recognized exception to that rule, namely regular entries, because a qualifying element of that rule is that the entries must be made at or near the time of the event which they purport to prove and cites numerous authorities. These authorities hold that the entries must be made at or about the time of the sale and delivery of the goods or when services were rendered for which the purchase price or compensation is sought to be recovered.

We do not dispute any of these authorities but in our opinion none of them apply to the appointment book in question. All of them refer to situations where recovery is sought for goods sold or services rendered. The present case is wholly different, no recovery is sought based on the entries in the appointment book and no claim is made against any person for performing any service.

Mrs. Eaken identified the book as Mr. Eaken's appointment book and testified that the appointments entered in it were mostly made in his handwriting, that she had made some for him when he was tired and that the appointments were entered when he made them.

The events which the book was offered to prove are the entries in the book of appointments for Thursday evenings during the year 1949. The book was kept in the regular course of business. The Uniform Business Records as Evidence Act of May 4, 1939, P. L. 42, sec. 2, 28 PS §91b, provides:

"A record of an act, condition or event shall, insofar as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business at or near the time of the act, condition or event, and if, in the opinion of the

court, the sources of information, method and time of preparation were such as to justify its admission." ·

The entries of appointments were made in the book at or about the time the appointments were made. It is a book kept in the regular course of business with entries of appointments made at the time the appointments were made and clearly admissible to show for what days and hours appointments were made. No person would keep a book of appointments and enter them to the date on which an appointment was made but would enter them to the day and time for which the appointment was made.

The book is admissible, to show appointments made and the dates and times for which they were made, under the provisions of the Uniform Business Records as Evidence Act, above quoted.

Taken in connection with his widow's statement that he was open Thursday evenings during 1949, the fact that he kept an appointment book which shows appointments for Thursday evenings during 1949 corroborates her statement, for reason and common sense tells us a man in business would not week after week enter appointments for Thursday evenings if he were not open for business on such evenings. There was no reason for making such entries except as a record of his engagements. The book corroborates his widow's statement and both were admissible to contradict plaintiff, Mrs. Diffenderfer, on a material fact, namely, the sources of light which were present on Spring Street on Thursday evenings in 1949, which included Thursday, November 10, 1949. Mrs. Eaken's testimony and the book were admitted to contradict plaintiff, Mrs. Diffenderfer, and the court so charged the jury. Such a contradiction is admissible to affect the credibility of Mrs. Diffenderfer.

Even if the book was improperly admitted, which, as we have stated, is not our opinion, the admission

did not harm plaintiffs. If the jury believed plaintiff, Mrs. Diffenderfer, it was dark and she could see nothing on Spring Street where she was walking and there was no reasonable necessity for her to be walking there, she had accomplished her errand and was proceeding to meet some friends whom she suddenly saw on Lincoln Way West. In such case plaintiff, Mrs. Diffenderfer, was guilty of contributory negligence as a matter of law and plaintiffs had no right to recover against defendants.

In Ellis v. Drab, 373 Pa. 189, 193, Mr. Justice Chidsey speaking for the Supreme Court stated:

"The cases governing the law of contributory negligence where a plaintiff is injured as a result of a fall in a darkened place were analyzed by Chief Justice Stern in Dively v. Penn-Pittsburgh Corporation, et al., 332 Pa. 65, 2 A. 2d 831, and Polm vs. Hession, 363 Pa. 494, 70 A. 2d 311, and these rules drawn from them: (1) where a person proceeds in absolute darkness without reasonable necessity, he is guilty of contributory negligence as a matter of law; and (2) where there is a 'fairly compelling reason' for walking in a place which is dark, but not utterly devoid of light, the question of contributory negligence is for the jury."

If the jury did not believe plaintiff, Mrs. Diffenderfer, and believed there was some light on Spring Street, then whether plaintiff, Mrs. Diffenderfer, was guilty of contributory negligence or not was a question for the jury to decide. That question was left to the jury and the jury found for defendants.

Now, this September 2, 1955, the motion for a new trial is refused.

Now, this September 2, 1955, exception granted to plaintiffs, Kenneth N. Diffenderfer and Florence Irene Diffenderfer.